UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HO-CHUAN CHEN and HOSSEIN BARAHIMI,

        Plaintiff(s),

  v.

LINDA DOUGHERTY, et al.,

        Defendant(s).

NO. C04-987P

ORDER ON DEFENDANTS' SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1. Defendants' Second Motion for Partial Summary Judgment

2. Plaintiffs' Memorandum in Opposition to Defendants' Second Motion for Partial Summary Judgment

3. Defendants' Reply Brief in Support of Second Motion for Partial Summary Judgment

4. Plaintiffs' Statement of Additional Authorities on Summary Judgment

and all exhibits and declarations attached thereto, makes the following ruling:

IT IS HEREBY ORDERED that the motion is GRANTED as to Plaintiffs' state law claims of retaliation based on racial discrimination (RCW 49.620.210); those claims are hereby DISMISSED with prejudice.

IT IS FURTHER ORDERED that the motion is DENIED as to Plaintiffs' federal law claims of violations of 42 U.S.C. §1983 and as to the individual defendants' claims of qualified immunity.

**Background**

Plaintiffs Hossein Barahimi and Ho-Chuan Chen are King County employees who were employed in the Road Services Division work group called Travel Forecasting and Data Management

**ORD ON MTN
FOR SUMM JMT - 1**

("TFDM"). Beginning in 2000 and continuing thereafter, Plaintiffs voiced specific concerns to superiors Linda Dougherty, Jennifer Lindwall, and Matthew Nolan, who allegedly responded to Plaintiffs' concerns with retaliation.

Plaintiffs' TFDM division was responsible for developing a traffic forecasting model which could be used in creating county development projects (which involve "concurrency" decisions – whether the road system can accommodate development in accordance with King County standards). Plaintiffs claim that they were retaliated against for highlighting the Transportation Department's failure to utilize and adhere to TFDM's traffic model (particularly in the Bear Creek/Redmond Ridge developments).

In March 2003, Plaintiffs and other TFDM members joined in a "whistleblower" complaint. After experiencing further alleged retaliation, Plaintiffs filed administrative (OCR) complaints alleging discrimination on the basis of race and national origin. (Defendants cite to four separate investigations of Plaintiffs' complaints – one by an outside investigator – which resulted in findings of no violations.)

The retaliation which Plaintiffs allege took many forms:

- Exclusion of TFDM from the "concurrency modeling process"
- Contracting modeling work normally assigned to TFDM to outside consultants without notice to TFDM (an alleged violation of the collective bargaining agreement)
- Plaintiffs excluded from meetings within their scope of work
- Plaintiffs listed as recipient of meeting minutes which asserted concurrence on matters to which they had not agreed
- Plaintiffs received a cancellation notice for a meeting which actually took place
- Defendant Dougherty excluded TFDM from participation in projects and development of new procedures

ORD ON MTN
FOR SUMM JMT - 2

- Defendant Lindwall told Plaintiff Chen he was not to communicate by e-mail about his complaints, but only discuss them face-to-face
- Plaintiffs falsely reprimanded for delivering "ultimatums" and "refusing to work"
- Plaintiffs targeted for layoffs (false budgetary crisis cited, other job positions manipulated to force Plaintiffs out), and retained jobs only by exercising "bumping rights"
- Plaintiffs received uncharacteristically negative performance evaluations

Plaintiffs are suing Defendants for injuries sustained from alleged retaliatory layoffs and for alleged retaliation for exercising their legal rights to seek administrative remedies for Defendants actions, as well as on the basis of racial discrimination.

**Discussion**

**Retaliation - RCW 49.60.210**

The Washington Law Against Discrimination ("WLAD") recognizes a cause of action for retaliation, and states in relevant part:

> (1) It is an unfair practice for any employer, employment agency, labor union, or other person to discharge, expel, or otherwise discriminate against any person. . . because he or she has filed a charge, testified, or assisted in any proceeding under this chapter.

RCW 49.60.210.

A prima facie case of retaliation under WLAD requires establishment of the following elements: (1) the plaintiff engaged in a statutorily protected activity; (2) the defendant took an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action. Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1065-66 (9th Cir. 2004); Harris v. City of Seattle, 315 F.Supp.2d 1112, 1125 (W.D.Wa. 2004); Milligan v. Thompson, 110 Wn.App. 628, 638 (2002).

ORD ON MTN
FOR SUMM JMT - 3

1   Plaintiffs' claims under this cause of action run afoul of the first element of their proof. Plaintiffs' "statutorily protected activity" is their OCR complaint of racial discrimination. It is not required that Plaintiffs establish at any point that the conduct complained of actually was unlawful. RCW 49.60.210 contains an "opposition clause" and "an employee who opposed employment practices reasonably believed to be discriminatory is protected by the 'opposition clause' whether or not the practice is actually discriminatory." Renz v. Spokane Eye Clinic, P.S., 114 Wn.App. 611, 619 (2002) (citations omitted).

However, case law is also clear that the opposition must be to conduct that is at least *arguably* a violation of the law. Blackford v. Battelle Memorial Institute, 57 F.Supp. 2d 1095, 1099-1100 (E.D.Wa. 1999); Kahn v. Salerno, 99 Wn.App. 110, 130 (1998). Both Blackford and Kahn make clear that Plaintiffs must produce evidence that "arguably" establishes that discrimination occurred on the basis of national origin, race or religion as of the date of their OCR complaint.[1] It is an equally well-established principle of summary judgment jurisprudence that Plaintiffs may not rely on mere allegations to withstand summary judgment but must produce evidence admissible at trial to rebut the motion.

Plaintiffs have failed to do that in regards to this claim. Their proof is devoid of a single circumstance or item of evidence which even arguably establishes that racial discrimination was at the heart of any of the conduct complained of here. Neither the simple fact of their race or national origin (Hill v. BCTI Income Fund, 144 Wn.2d 172, 190 (2001)) nor their own self-serving declarations of their subjective impressions or the hearsay statements of co-workers are sufficient to satisfy the requirements of the statute. In the absence of admissible evidence on this issue, their claim must fail.

---

[1] Hence, Plaintiffs' evidence of allegedly retaliatory or discriminatory conduct occurring after the OCR complaint was filed is unavailing in establishing the first element of their state law claim.

**ORD ON MTN**
**FOR SUMM JMT - 4**

**1st Amendment/§ 1983 Retaliation**

To establish a prima facie case of retaliation based upon an employee's exercise of speech protected under the First Amendment, the employee must show: (1) the employee engaged in protected speech; (2) the defendant took an "adverse employment action" against the employee; and (3) the speech was a "substantial or motivating" factor for the adverse employment action. Thomas v. Beaverton, 379 F.3d 802, 807-8 (9th Cir. 2004); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977).

Defendants first attack Plaintiffs' §1983 claim on the grounds that their speech was not protected because they were not speaking as citizens "upon matters of public concern," but rather as employees "upon matters only of personal interest." Were this to be the case, the claim would fail at the outset. Thomas, 397 F.3d at 808 (quoting Roe v. City of San Diego, 356 F.3d 1108, 1112 (9th Cir. 2004)). The argument is not persuasive, and the Court is far from convinced that complaints about governmental agencies failing to follow their own regulations and policies at the potential waste of public funds and risk to public safety are somehow not "matters of public concern."

Defendants also seek summary judgment on the basis that the job actions to which Plaintiffs were subject were not "adverse employment actions" as that term is defined by the case law. Again, the argument fails to persuade. Defendants have already sought (and been denied) summary judgment on their claim that what happened to Plaintiffs cannot be characterized as "layoffs." Order on Defendants' Motion for Partial Summary Judgment (May 3, 2005, Dkt. No. 65). Having already ruled that there is a genuine dispute of material fact as to that issue, and viewing the evidence in the light most favorable to the non-moving party, the Court finds that, were a jury to agree with Plaintiffs that they had indeed been laid off and forced to find new jobs, that finding would constitute an "adverse employment action" within the accepted meaning of that term (i.e., a "significant" change in

**ORD ON MTN**
**FOR SUMM JMT - 5**

1  employment status; Harris, 315 F.Supp.2d at 1125; Burlington Industries, Inc. v. Ellerth, 524 U.S.
2  742, 761 (1998)).

3      Defendants challenge Plaintiffs' proof that their speech was a "substantial or motivating" factor
4  for the adverse employment action. This is necessarily a circumstantial, fact-intensive inquiry and the
5  Court has no difficulty finding that there are genuine issues of material factual dispute as to this
6  element. The facts as detailed in the Background section *supra*, viewed in Plaintiffs' favor, could
7  certainly lead a jury to conclude that the actions taken by Defendants were motivated by a desire to
8  retaliate for Plaintiffs' lengthy and insistent outcries that something was rotten in the County of King.

9      For purposes of summary judgment, Plaintiffs do not have to establish all elements of their
10 claims, but merely show that, viewing the facts in the light most favorable to them, a jury could
11 reasonably conclude that they had done so. They have carried that burden, which then shifts to
12 Defendants to establish one of two defenses: that their legitimate administrative interests outweighed
13 the Plaintiffs' First Amendment rights (the "balancing test" of Pickering v. Board of Education, 391
14 U.S. 563, 568 (1968)) or that they would have reached the same result even if Plaintiffs had not
15 engaged in the protected conduct (the "mixed motive" analysis of Mt. Healthy *supra*).

16     Under neither of these analytical tests can the Court find in favor of the moving parties. Under
17 the Pickering balancing test, the Court is not prepared to say as a matter of law that the laundry list of
18 considerations proffered by Defendants (e.g., maintenance of disciple, preservation of harmony,
19 maintenance of personal loyalty, etc.) actually outweighs Plaintiffs' right to be protected against
20 retaliation for speaking out against possible governmental abuses.

21     To prevail at summary judgment on their "mixed motive" argument, Defendants must
22 successfully argue that there are no disputed issues of material fact and that as a matter of law the
23 Court must find that they would have done what they did (particularly as regards the restructuring of
24 Plaintiffs' job environments) regardless of whether Plaintiffs had exercised their First Amendment
25
26 **ORD ON MTN**
   **FOR SUMM JMT - 6**

1  rights.  To say that that is hardly the case is an understatement.  Even assuming that King County had

2  a budget crisis of sufficient proportion to warrant job restructuring and elimination of positions within

3  Plaintiffs' department, Plaintiffs have introduced evidence and testimony that calls into question every

4  non-discriminatory motive which Defendants seek to ascribe to their decisions.  These claims, under

5  the evidence adduced thus far, are simply not appropriate for resolution by summary judgment.

6  Having reached that conclusion, the Court will not inquire further into whether Plaintiffs have

7  sufficient evidence that Defendants' asserted motives were "pretextual" – if Defendants are not

8  entitled to summary judgment at the "balancing test/mixed motive analysis" stage, there is no need to

9  proceed further.

10  Defendants make one final argument which must be addressed.  Coszalter v. City of Salem,

11  320 F.3d 968 (9th Cir. 2003) is cited for the proposition that since, regardless of what Defendants did

12  and regardless of their motives for doing it, Plaintiffs were never deterred from exercising their free

13  speech rights there can be no First Amendment violation.  Id. at 975 (citing Nunez v. City of Los

14  Angeles, 147 F.3d 867, 875 (9th Cir. 1998).  The selective quotes from this opinion misrepresent the

15  holding of the Coszalter court.

16  The case does not stand for the principle that as long as a party is not silenced by the retaliation

17  then the retaliatory conduct is not actionable.  Rather the case states that "[t]he essential holding of

18  Nunez is simply that when an employer's response includes only minor acts, such as 'bad-mouthing,'

19  *that cannot be reasonably expected to deter protected speech*, such acts do not violate an employee's

20  First Amendment rights." 320 F.3d 968, 975 (9th Cir. 2003) (emphasis supplied).  The test is not

21  whether the speech was successfully suppressed, but whether the acts are such that they could be

22  reasonably expected to stop someone from exercising their right of free speech.  Viewing the facts in

23  the light most favorable to Plaintiffs, a jury might well find that the litany of retaliatory actions they

24  allege could "be reasonably expected to deter protected speech."  The fact that Plaintiffs were

25

26  **ORD ON MTN**
**FOR SUMM JMT - 7**

undeterred by Defendants' conduct (whether or not that conduct ultimately proves actionable) is not determinative of any outcome.

Nor is the Court persuaded that Plaintiffs should not be permitted to introduce the full spectrum of occurrences which they characterize as retaliatory simply on the grounds that, viewed in isolation, they might be considered insignificant. "Bad mouthing" and failing to invite someone to a meeting might be considered "only minor acts" which would not reasonably deter free speech individually, but when considered in conjunction with a string of such events they may take on a different character entirely.

**Qualified Immunity**

The qualified immunity doctrine stands for the proposition that "government official performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603,   Defendants' argument that the individual defendants in this matter should be granted such immunity is founded on the notion that, since none of them could reasonably have been expected to know that any of the acts which Plaintiffs allege constitute the network of retaliatory behavior (e.g., hiring an outside consultant, failing to invite a group of employees to a meeting, choosing to eliminate a job position in response to a budget problem, etc.) violated Plaintiffs' First Amendment rights, those individuals should be "shielded from liability."

That analysis misses the point. Defendants have not argued that the persons in question could not reasonably have known that it was violative of Plaintiffs' rights to retaliate against them for exercising their First Amendment privileges. It is through that filter that the acts which Plaintiffs enumerate must pass. Viewing the facts in the light most favorable to Plaintiffs, this Court finds that a

**ORD ON MTN**
**FOR SUMM JMT - 8**

1 jury could reasonably conclude that the intent behind the conduct Plaintiffs complain of was retaliatory and on that basis a summary judgment finding of qualified immunity is inappropriate.

Lastly, Defendants contend that the individual defendants should be dismissed from this lawsuit because they are fully indemnified by King County. They offer neither statutory nor case authority for that position and the Court declines to accept the suggestion.

**Conclusion**

Defendants are entitled to summary judgment of dismissal regarding Plaintiffs' state law claims of retaliation based on racial discrimination on the grounds that Plaintiffs have adduced no evidence of conduct which is even arguably violative of the laws prohibiting such discrimination.

Summary judgment as regards Plaintiffs' §1983 claims will not be granted – there remain genuine disputes of material fact on every element of that cause of action. Defendants' motion for a summary judgment ruling of qualified immunity for the individual defendants will likewise be denied as Defendants have not established, on the basis of undisputed facts and as a matter of law, that the individuals in question could not reasonably have known that it was violative of Plaintiffs' rights to retaliate against them for exercising their freedoms of speech.

The clerk is directed to provide copies of this order to all counsel of record.

Dated:  June 28, 2005

Marsha J. Pechman
U.S. District Judge

ORD ON MTN
FOR SUMM JMT - 9