UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

HO-CHUAN CHEN and HOSSEIN BARAHIMI,

        Plaintiffs,

  v.

LINDA DOUGHERTY, et al.,

        Defendants.

---

HOSSEIN BARAHIMI,

        Plaintiff,

  v.

KING COUNTY ROADS SERVICES DIVISION and SUE OSTERHOUDT,

        Defendants.

No. C04-987 MJP

ORDER ON MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO STRIKE

    This matter comes before the Court on three motions brought by Defendants: (1) a motion for summary judgment (Dkt. No. 231); (2) a motion to strike statements in Mr. Barahimi's declaration (Dkt. No. 251 at 4); and (3) a motion to strike privileged communications and for entry of a protective order (Dkt. No. 248). Also before the Court is Plaintiff's motion to strike the testimony of

ORDER - 1

Bruce Taylor (Dkt. No. 241 at 28). After reviewing the motions, responses (Dkt. Nos. 241 & 253), replies (Dkt. Nos. 251 & 260), all papers submitted in support thereof, and the balance of the record, the Court GRANTS in part and DENIES in part the motion for summary judgment and hereby DISMISSES Plaintiff Barahimi's claim for intentional infliction of emotional distress. The Court DENIES the motions to strike.

**Background**

Plaintiff Hossein Barahimi brought this action in August 2007 against his employer, King County, and supervisor, Sue Osterhoudt. This action relates to a case brought by Plaintiffs Ho-Chuan Chen and Hossein Barahimi, who were employed in a division in the King County Department of Transportation known as the Travel Forecasting and Data Management Group ("TFDM"). Their joint action alleges first amendment retaliation against King County and several other supervisors in the Department of Transportation, but Ms. Osterhoudt is not a named defendant. Mr. Barahimi's separate complaint against Ms. Osterhoudt alleges a first amendment retaliation claim under 42 U.S.C. § 1983 in addition to a state law claim for intentional infliction of emotional distress. In the current motion, Defendants King County and Ms. Osterhoudt move for summary judgment on both claims.

**Analysis**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Material facts" are facts "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

I. First Amendment Retaliation Claim

ORDER - 2

Public employers are prohibited from violating an employee's constitutional rights by taking an adverse employment action against them for engaging in protected speech. To establish a first amendment retaliation claim, the employee must show: (1) that he engaged in constitutionally protected speech; (2) that the employer took "adverse employment action" against him; and (3) that the speech itself was a "substantial or motivating" factor for the adverse action. Marable v. Nitchman, 511 F.3d 924, 929 (9th Cir. 2007) (internal citations omitted).

1. Protected Speech

This Court has previously held that Plaintiff Barahimi engaged in protected speech when he communicated allegations of departmental misconduct to the King County Ombudsman, Executive, Prosecutor, and Council and when he filed a union grievance on the issue of work assignments. (December 17, 2008 Order, Dkt. No. 263.)

In addition, Mr. Barahimi now asserts that this litigation against Ms. Osterhoudt and the related action with Plaintiff Chen are protected speech. (Dkt. No. 241 at 21.) To determine whether these lawsuits constitute protected speech, the Court must apply the three-step analysis set forth in Posey v. Lake Pend Oreille School Dist. No. 84, 546 F.3d 1121, No. 07-35188, 2008 U.S. App. LEXIS 21565, (9th Cir. Oct. 15, 2008). The first of these steps requires the Court to evaluate the content of the lawsuits and determine whether they involve "matters of public concern." 546 F.3d at 1130 (internal quotation marks and citation omitted). The parties have not briefed this issue. Because this Court has previously found that Plaintiff did in engage in communications that are constitutionally protected, it need not decide whether the lawsuits constitute protected speech on this motion.

2. Adverse Employment Action

First amendment retaliation claims aim to prevent "actions by a government employer that chill the exercise of protected First Amendment rights." Coszalter v. City of Salem, 320 F.3d 968, 975 (9th Cir. 2003) (internal citation and quotation marks omitted). To constitute an adverse

ORDER - 3

employment action, the act of retaliation need not be "severe" or "of a certain kind," but need only deter the exercise of first amendment rights. Id.

Plaintiff alleges that he has lost "thousands of dollars of merit pay" as a result of Defendants' retaliatory conduct. (Dkt. No. 241 at 24.) Mr. Barahimi earns a yearly merit pay increase if his supervisor reviews his work performance as "outstanding" for two consecutive years. (Barahimi Decl. at ¶ 11.) Mr. Barahimi received "outstanding" reviews from 1994 to 2003. Ms. Osterhoudt's evaluation of Mr. Barahimi's work for the years 2004, 2005, 2006, and 2007 did not reach the level of "outstanding" and Mr. Barahimi was denied a merit pay increase for years 2005, 2006, and 2007.[1] (See Barahimi Decl. at Ex. D.) If, as Plaintiff alleges, he was entitled to higher reviews and the merit pay increases, Defendants' denial of both is an employment action that could effectively chill first amendment speech, and therefore constitutes adverse employment action for a retaliation claim.

3. Substantial or Motivating Factor

A plaintiff can introduce three types of evidence to show that retaliation for protected speech was a substantial or motivating factor behind a defendant's adverse employment action: (1) the proximity in time between the speech and the adverse employment action; (2) expressions by the employer in opposition to the plaintiff's speech; and (3) evidence that the employer's explanation for the adverse employment action was pretextual. Coszalter, 320 F.3d at 977.

Mr. Barahimi first voiced complaints about possible misconduct within the Department of Transportation in 2002, and those communications continued into 2003. When Mr. Barahimi was laid off at the end of 2003[2], he exercised his union "bumping" rights to take the position under Ms. Osterhoudt's supervision, which he began in January 2004. The record suggests that Ms. Osterhoudt

---

[1]After Mr. Barahimi appealed Ms. Osterhoudt's 2004 performance appraisal, Linda Dougherty, a Division Manager, increased Mr. Barahimi's number score such that he received the merit pay increase for that year despite the substance of Ms. Osterhoudt's review.

[2]Mr. Barahimi's initial lay-off is the subject of the first amendment retaliation claim in the related action and will not be discussed here.

ORDER - 4

knew of the protected speech when Mr. Barahimi began working in the new position because the "whistleblower and retaliation complaints were widely known within King County Road Services Division." (Barahimi Decl. at ¶ 17; Dkt. No. 242-2 at 6.)   Ms. Osterhoudt showed immediate dissatisfaction with Mr. Barahimi's work, and, by March 2004, had re-assigned Mr. Barahimi to a "simpler" project. (See id. at ¶ 21-24; Dkt. No. 242-2 at 9.) Ms. Osterhoudt's dissatisfaction with Plaintiff's work product culminated in an initial performance review for 2004 that did not reach the level of "outstanding."

The proximity in time between protected speech and an adverse employment action can give rise to an inference of retaliation. Coszalter, 320 F.3d at 977. The Ninth Circuit has refused to establish a specific time range to support the inference, but has held that even "an eleven-month gap in time is within the range that has been found to support an inference that an employment decision was retaliatory." Allen v. Iranon, 283 F.3d 1070, 1078 (9th Cir. 2002). Ms. Osterhoudt's criticism of Mr. Barahimi's work product, culminating in the first of a series of reviews that were lower than "outstanding," began within three months of Mr. Barahimi's start date in the new position. Mr. Barahimi engaged in protected speech as late as June 2003, placing the adverse employment action within eight to ten months of the time of the protected speech. (See Dkt. No. 195-2 at 74-76.) This close proximity between the speech and the adverse employment action supports an inference of retaliation.

This inference can be bolstered by evidence that Defendants' explanation for Ms. Osterhoudt's criticisms of Mr. Barahimi's work is pretextual. Coszalter, 320 F.3d at 977. Defendants contend that Ms. Osterhoudt would have supervised Mr. Barahimi and reviewed his work in exactly the same way even if Mr. Barahimi had never engaged in the protected speech. (Dkt. No. 231 at 22.) However, the parties present conflicting evidence concerning the substance of Mr. Barahimi's previous experience, skills, and training and the quality of his work product under Ms. Osterhoudt.

Both parties acknowledge that the position Mr. Barahimi began in 2004 under Ms. Osterhoudt's supervision was substantively different from work that Mr. Barahimi had previously performed. Defendants assert that Mr. Barahimi lacked the project management skills required for his new position (Dkt. No. 231 at 22, citing Taylor Decl. at ¶ 13), yet Mr. Barahimi had experience as a project manager in the Traffic Forecasting and Data Management group (Dkt. No. 241 at 11; Chen Decl. at ¶ 7). The parties also dispute the substance of Mr. Barahimi's past work experience and acquired skills, particularly the work he performed under Ms. Osterhoudt's supervision in 1999. At that time, Mr. Barahimi was working as a Senior Transportation Planner and contends that he was performing senior-level planning duties (Barahimi Decl. at ¶¶ 6-7; Dkt. No. 242-2 at 3), but Defendants allege that his duties were "largely administrative" (Dkt. No. 231 at 5). Ultimately, determining the quality of Mr. Barahimi's work performance under Ms. Osterhoudt from 2004 onward and the accuracy of Ms. Osterhoudt's assessment of that performance is a highly factual inquiry. With contradictory evidence in the record, the final determination of these issues must be left to a trier-of-fact.

    Mr. Barahimi worked under Ms. Osterhoudt's supervision until 1999 and declares that she did not impose restrictions on his ability to perform his work during that period in the same way she did when he began the new position in 2004. (Barahimi Decl. at ¶ 9; Dkt. No. 242-2 at 4.) From 2004 onward, Mr. Barahimi "found Ms. Osterhoudt's behavior and management style to be drastically different from her earlier years of supervising [him]." (Id. at ¶ 26; Dkt. No. 242-2 at 11.) Ms. Osterhoudt had previously given Mr. Barahimi high ratings on his work performance appraisals (Dkt. No. 241 at 9-10; Dkt. No. 242-2 at 5) and he had received only "outstanding" performance appraisals from his supervisors between 2000 and 2003 (Barahimi Decl. at ¶ 12, Ex. D; Dkt. No. 242-2 at 5). Beginning in 2004 under Ms. Osterhoudt's supervision, Mr. Barahim began receiving lower performance ratings that eventually disqualified him from merit pay increases. While these reviews and Ms. Osterhoudt's altered management style may have been justified by Mr. Barahimi's

performance in the new position, this record does not establish as a matter of law that Defendants' actions were not retaliatory. Given the proximity of the adverse employment action to the protected speech and the factual disputes concerning Mr. Barahimi's experience and work skills, Defendants' motion on this claim must be DENIED.

II. Intentional Infliction of Emotional Distress

To establish his state law claim, Plaintiff must demonstrate: (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) resulting severe emotional distress. Birklid v. Boeing Co., 127 Wash.2d 853, 867 (1995). Mr. Barahimi's claim fails because the conduct alleged does not rise to the level of outrage.

"Whether conduct is sufficiently outrageous is ordinarily a jury question," but "the trial court must initially determine if reasonable minds could differ on whether the conduct was extreme enough to result in liability." Kirby v. City of Tacoma, 124 Wn. App. 454, 473 (Wash.App. Ct. 2004) (citing Dicomes v. State, 113 Wash.2d 612, 630 (1989)). The standard for outrageous conduct is extremely high and the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Id.

Plaintiff alleges that Ms. Osterhoudt was unjustified in expressing dissatisfaction with his work, arbitrarily changed his work assignments, unnecessarily micro-managed his performance, and often treated him with disrespect and behaved towards him in a humiliating and unprofessional manner. (See Barahimi Decl. at ¶¶ 24-36.) Such conduct in the workplace is not regarded as "atrocious" or "intolerable in a civilized community." See Kirby, 124 Wn. App. at 474 (affirming dismissal of a claim for intentional infliction of emotional distress when the defendant's alleged actions included oral reprimands and internal investigations of the plaintiff's work affairs). Because Plaintiff's allegations do not meet the high standard for outrageous conduct, Mr. Barahimi's state law claim must be DISMISSED.

III. Motions to Strike

Three motions to strike are currently pending: (1) Defendants' motion to strike statements in Mr. Barahimi's declaration (Dkt. No. 251 at 4); (2) Plaintiff's motion to strike the testimony of Bruce Taylor (Dkt. No. 241 at 28); and (3) Defendants' motion to strike privileged communications (Dkt. No. 248). The Court need not address Defendants' motion to strike portions of Mr. Barahimi's declaration because the Court did not rely on contested statements in reaching its decision.

    1. Motion to Strike the Testimony of Bruce Taylor

Plaintiff's motion to strike Mr. Taylor's testimony is DENIED. For purposes of this motion, Mr. Taylor has established that his education and experience give him particularized knowledge of project management. Mr. Taylor's declaration defines relevant terms unfamiliar to this Court, explains the general work requirements of a project manager, and compares Mr. Barahimi's work to the standard Mr. Taylor would expect from a project manager. (See Taylor Decl. at ¶¶ 8, 13-17.) This type of testimony does not "invade the province of the jury" as Plaintiff alleges, and has been considered by this Court in deciding this motion.

    2. Motion to Strike Privileged Communications[3]

The Court is aware that counsel in this matter have had difficulty communicating over issues of electronic discovery. Defendants now contend that they mistakenly produced privileged documents in electronic form. Upon Plaintiff's motion to compel, this Court ordered that Defendants produce their discovery in a searchable database. Such a database should allow quick identification of any privileged materials. Nonetheless, the documents now at issue were not identified in the privilege log provided to Plaintiff's counsel despite the "attorney-client privileged" label that appears on the documents themselves. (Dkt. No. 254 at 2.) Since Defendants now contend that their

---

[3] This motion was properly brought under Local Civil Rule 7(d)(2).

production was in error, the Court must conclude that Defendants did not perform a thorough review of their own documents before compiling their privilege log.

Given the extensive privilege log produced by Defendants, Plaintiff's counsel could reasonably assume that documents not listed on the log had been determined not privileged. Nonetheless, the contested documents have now been returned to Defendants. Whether the documents are in fact privileged is still at issue.

Defendants offer no affidavit stating that Ms. Osterhoudt sought legal advice through the email communications. The substance of the emails suggests otherwise, as they primarily involve information regarding Mr. Barahimi's work for Ms. Osterhoudt. Without further evidence that this material falls within the realm of attorney-client privilege, Defendants' motion to strike must be DENIED.

**Conclusion**

Because material disputed facts exist as to whether Mr. Barahimi has made a prima facie retaliation claim, Defendants' motion for summary judgment on that claim is DENIED; because Defendants' have shown as a matter of law that Plaintiff's claim for intentional infliction of emotional distress cannot be sustained, that claim is hereby DISMISSED. Plaintiff's motion to strike material in Defendants' motion is DENIED; Defendants' motions to strike content in Mr. Barahimi's declaration and to strike allegedly privileged communications are also both DENIED.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: December 17, 2008.

*/s/ Marsha J. Pechman*

Marsha J. Pechman

U.S. District Judge